1   GEORGE W. ABELE (SB# 149846)
    georgeabele@paulhastings.com
2   HOLLY R. LAKE (SB# 204304)
    hollylake@paulhastings.com
3   RYAN J. CRAIN (SB# 266172)
    ryancrain@paulhastings.com
4   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    515 South Flower Street
5   Twenty-Fifth Floor
    Los Angeles, CA  90071-2228
6   Telephone:  (213) 683-6000
    Facsimile:  (213) 627-0705
7
    Attorneys for Defendant
8   UNITED PARCEL SERVICE, INC.

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12

|  |  |
|---|---|
| 13  RANDY WALTERS, individually, and on behalf of the members of the general public, | Case No. EDCV 10-00556 VAP (PJWX) |
| 14            Plaintiff, | **DEFENDANT UNITED PARCEL SERVICE, INC.'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW (LR 56-1)** |
| 15       vs. | |
| 16  UNITED PARCEL SERVICE, INC., an Ohio Corporation registered to do business in the State of California; and DOES 1 - 50, inclusive, | *[Filed and served concurrently herewith Memorandum of Points and Authorities in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; [Proposed] Statement of Uncontroverted Facts and Conclusions of Law in Support Thereof; Declarations of Patrick Donaldson, Clarissa Gomez, Mary Sue Allen, and Holly Lake in Support Thereof; [Proposed] Order; and [Proposed] Final Judgment]* |
| 17  Defendants. | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | Date:        December 27, 2010 |
| 24 | Time:        2:00pm<br>Courtroom:   2 |
| 25 | Judge:       Hon. Virginia A. Phillips |
| 26 | Complaint Filed:  January 15, 2010<br>Trial:  March 15, 2011 |

27

28

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56-1 of the Local Rules of the United States District Court for the Central District of California, Defendant United Parcel Service, Inc. ("UPS") respectfully submits the following [Proposed] Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment:

## I.   UNCONTROVERTED FACTS[1]

### A.   Walters' Employment with UPS

1.   Plaintiff Randy Walters ("Walters" or "Plaintiff") began working for UPS in 1986 as a full-time Package Car Driver. (Walters Tr.[2] 56:15-17).

2.   In 1987, UPS promoted Walters to the position of On-Road Supervisor, at which time he became a member of UPS's Management Team. (Walters Tr. 57:2-10; 60:15-17).

3.   In 2001, UPS promoted Walters to the position of Business Manager. (Walters Tr. 59:1-3).

4.   In September 2007, Walters became Ontario Hub Training Manager. (Walters Tr. 59:20-~~60:6~~ 59:22).

5.   In August 2008, Walters was moved from the Ontario facility to the Vernon facility. (Walters Tr. 118:17-22).

6.   In August 2008, Walters was demoted one level to the position of Dispatch Supervisor. (Walters Tr. 59:~~20~~24-60:6).

7.   As a result of his demotion, Walters' annual salary decreased from $92,760 to $88,860. (Walters Tr. 132:22-133:10).

---

[1] UPS bases its Motion entirely on Walters' own deposition testimony, without admitting the truthfulness of Walters' testimony, and other facts that Walters has not disputed and/or cannot dispute.

[2] All witness deposition testimony is cited as "([Witness Last Name] Dep. [page]:[lines])." Deposition exhibits are cited as "(Dep. Ex. [number])." Cited pages of deposition testimony and deposition exhibits are attached as exhibits to the Declaration of Holly R. Lake filed concurrently herewith.

*8. Walters became a member of UPS's management team in 1987. (Walters Tr. 60:15-17).*

1    ~~8.~~    Since 1987, Walters has been, and continues to be, a member of

2    the UPS Management Team.   (~~Walters~~ Tr. 60:10-17).

3    **B.    UPS Trains Its Employees On Its Policies Against Unlawful**

4         **Harassment.**

5         9.    UPS has equal employment opportunity policies that prohibit

6    any form of unlawful discrimination, harassment, or retaliation.  (Gomez Dec. ¶ 8).

7         10.    UPS's policy against harassment provides "any employee who

8    violates [the] policy may be subject to termination or other disciplinary action."

*Lake Decl., Ex. A,*

9    (~~Walters Tr. 73:4-23~~, Ex. 9).

10         11.    UPS trained Walters regarding the prevention of harassment in

11   the workplace.  (Walters Tr. ~~73:8-23; Ex. 9;~~ 76:19-24; 77:3-5; 77:9-11; ~~131:16-19~~).

12   **C.    Management Team Members Are Employed At-Will.**

*Plaintiff is not aware of*

13        12.    ~~UPS does not have~~ any written contract that identifies how

14   members of the Management Team can be disciplined or terminated.  (Walters

15   Tr. 65:14-17).

*Plaintiff is not aware of*

16        13.    ~~UPS does not have~~ a contract, written or otherwise, that

17   identifies the grounds upon which Management Team members can be disciplined

18   or terminated.  (Walters Tr. 65:18-21).

*Plaintiff is not aware of*

19        14.    ~~UPS does not have~~ any written contract or oral contract that

20   promises members of the Management Team employment for a specified time.

21   (Walters Tr. 65:22-66:3; 66:19-22; 67:20-23).

22        15.    Walters understood he could quit at any time (Walters Tr. 68:21-

23   24).

24        16.    No one told Walters that UPS required just cause to terminate

*68:25-70:6*

25   him, (Walters Tr. ~~69:9-12~~).

26   *though he believed there was an understanding he could only*

27   *be terminated for just cause.*

28

DEFENDANT UPS'S STATEMENT OF
UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

**D.**   **UPS Received A Complaint Against Walters, Conducted A**

**Reasonable Investigation and Based On Its Investigation Findings,**

**Decided to Demote and Transfer Walters.**

17.   On August 4, 2008, through Patrick Donaldson ("Donaldson"), ~~a part time manager,~~ *District Human Resources manager,*

UPS received a *verbal* complaint from Amy Franklin ("Franklin"), that Walters sexually

harassed her. (Donaldson Dec. ¶ 6). *Franklin did not prepare a written statement or sign anything at her meeting with Donaldson. (Franklin Dep. 58:16-59:2; 60:11-12; 100:14-101:8.)*

18.   On August 4, 2008, Donaldson interviewed Franklin regarding

her allegations against Walters. (Donaldson Dec. ¶ 6).

19.   During the interview, Franklin told Donaldson that on August 3,

2008, Walters sent Franklin a text message stating "Im wondering how ur holding

up. And since I'll more than likely never be able to discuss this with u let me

explain why I'm being so difficult. I just happen to Love U. And there's nothing u

can do about it." (Donaldson Dec. ¶ 6, Ex. B). *Franklin showed Donaldson the August 3, 2010, text message and Donaldson wrote down its contents and the sender's telephone number.*

20.   During the interview, Franklin told Donaldson that ~~sometime~~ *one or two weeks before August 3, 2010*

~~between July 27 and August 3,~~ Walters left a voice message on Franklin's

telephone, ~~referring to himself as a~~ *stating, "I'm an ass. I don't know why you didn't want to talk to me... I'm a* "Galactic Fucking Idiot." (Donaldson Dec. ¶ 6,

Ex. B). *Franklin Dep. 59:3-23; 78:1-7*

21.   On August 4, 2010, Donaldson informed Walters of the

allegations against him. (Walters Tr. 80:12-23; 85:8-2̶2̶ *11*).

22.   Donaldson requested that Human Resources Representative

Clarissa Gomez ("Gomez") further investigate Franklin's allegations. (Donaldson

Dec. ¶ 7; Gomez Dec. ¶ 12).

23.   In conjunction with her investigation, Gomez ~~interviewed~~ *met with*

Walters twice regarding Franklin's allegations. (Walters Tr. 87:11-13; 89:6-14;

90:13-15).

24.   During the first ~~interview~~ *meeting* with Walters, Gomez informed

Walters of the allegations against him, including that Franklin ~~felt harassed by~~ *complained about* his

August 3, 2008 text message. (Walters Tr. 85:20-22; 89:15-24).

DEFENDANT UPS'S STATEMENT OF
UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

25.    During her ~~interview~~ meeting with Walters, Gomez provided Walters with an opportunity to respond to the allegations. (Walters Tr. 88:22-25; 89:15-90:5).

26.    Gomez gave Walters the opportunity to provide UPS with a written statement responding to the allegations. (Walters Tr. 86:20-25; 90:6-91:12). *Walters requested additional time to prepare the written statement. (Walters Tr. 90: 6-12.)*

27.    On August 7, 2008, Walters provided Gomez with a written statement responding to Franklin's allegations. (Walters Tr. 86:20-25; 87:4-8; 90:6-91:12).

28.    In Walters' written statement responding to the allegations, Walters admitted that he left a voice mail ~~for Franklin~~ referring to himself as a "Galactic Asshole," ~~rather~~ than as a "Galactic Fucking Idiot." (Walters Tr. 90:6-91:25, Ex. 12).

29.    In Walters' written statement responding ~~to the allegations~~, Walters admitted that he ~~sent Franklin a~~ text message stating, in part, "I love U and ~~there is nothing~~ you can do about it." (Walters Tr. 90:6-25, Ex. 12).

30.    In Walters' written statement responding to the allegations, Walters admitted that he "underst[oo]d, given the right mind set how one could reach [her] conclusion." (Walters Tr. 90:6-91:25, Ex. 12; 93:9-12).

31.    Gomez also interviewed Elia Luna, who purportedly had information related to Franklin's allegation. (Gomez Tr. 111:23-112:2; Gomez Dec. ¶ 14; ~~Walters Tr. 81:11-19; 83:3-15; 83:21-25~~).

32.    Based only on the investigation findings, Gomez believed Walters' conduct to be inconsistent with UPS's expectations of managers and unbecoming of an employee in his position. (Gomez Dec. ¶ 4, ~~15~~ 14).

33.    Based only on the investigation findings, Gomez recommended to Donaldson that Walters be moved to another location, demoted, and denied the

1  annual MIP Award.  (Gomez Tr. 164:18-25; 165:7-11; 169:15-24; Gomez Dec.

2  ¶ 14, 15).

3        34.    Donaldson reviewed Gomez's recommendation.  (Donaldson

4  Dec. ¶ 9).

5        35.    Based on the results of the investigation, ~~and for no other~~

6  ~~reason,~~ Donaldson told Mary Sue Allen ("Allen"), the Human Resources Manager

7  for UPS's West Region, that he believed that Walters sexually harassed Franklin

8  and created a hostile work environment and that he believed that Walters

9  disregarded his obligations as a manager.  (Donaldson Dec. ¶ 9).

10       36.    ~~Based on Donaldson's beliefs,~~ Donaldson recommended to

11  Allen that Walters be demoted to the level of supervisor, lose his eligibility for

12  2008 MIP, and be relocated to another building.  Allen agreed with Donaldson's

13  recommendation.  (~~Walters Tr. 121:12-15; 124:24-25;~~ Donaldson Dec. ¶ 9; Allen

14  Dec. ¶ 5).

15       37.    Walters does not know who made the decision to demote and

16  transfer him.  (Walters Tr. 106:4-7; ~~121:12-15; 124:24-25~~).

17  **E.    On January 15, 2010, Walters Filed A Complaint Against UPS.**

18       38.    Walters filed his Complaint on January 15, 2010.  (Lake Dec. ¶

19  7, Ex. D).

20       39.    Walters' claims for ~~wrongful demotion in violation of~~ public

21  policy and ~~negligence~~ are based on the same set of facts as his claims for breach of

22  contract and discrimination.  (Compl. ¶¶ 24, 28, 39).

23  **F.    No Officer, Director, Or Managing Agent Engaged In Conduct**

24  **Suggesting Malice, Fraud, Or Oppression.**

25       40.    Walters does not ~~have any~~ evidence that any person involved in

26  the decision to ~~transfer or~~ demote him was an officer, director or managing agent,

27  ~~because they were not.~~  (Walters Tr. 122:18-123:12; 123:17-125:4; 125:14-126:20;

28

1   214:11-22; 215:5-10; Donaldson Dec. ¶¶ 3, 4, 5; Gomez Dec. ¶ ¶ 6, 7; Allen Dec.

2   ¶¶ 2, 3, 4).

3   **II.    CONCLUSIONS OF LAW**

4         **A.    UPS is Entitled to Summary Judgment Because Plaintiff Has No**

5              **Evidence to Raise a Triable Question Regarding the Elements of**

6              **His Claims**

7         41.    Under Federal Rule of Civil Procedure 56(c), summary

8   judgment should be granted if "there is no genuine issue as to any material fact and

9   . . . the moving party is entitled to judgment as a matter of law." In *Celotex Corp.*

10  *v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the

11  Supreme Court held that summary judgment is appropriate where a plaintiff is

12  unable to present proof of an essential element of a claim.

13        42.    To withstand an employer's motion for summary judgment in a

14  discrimination suit, the employee must do more than establish a prima facie case

15  and deny the credibility of the employer's witnesses. The plaintiff must also offer

16  specific and significantly probative evidence that the employer's alleged purpose in

17  taking an adverse employment action against plaintiff is a pretext for

18  discrimination. *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir.

19  1986).

20        43.    A plaintiff cannot create a genuine issue of material fact by

21  disputing his own prior sworn testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d

22  262, 266 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540,

23  544 (9th Cir. 1975).

24        **B.    Plaintiff's Claims Fail Because Plaintiff Has No Evidence of an**

25              **Implied Contract of Employment**

26        44.    To establish a breach of an implied contract claim, a plaintiff

27  must show that the employer's conduct during the course of the employment

28  relationship implied there was an agreement to terminate (or demote) the employee

1  only for cause. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 676-681 (1988).

2  To sustain a breach of implied covenant claim, a plaintiff must show establish an

3  underlying contract. *Pugh v. See's Candies, Inc. (Pugh I)*, (1981) 116 Cal. App. 3d

4  311, 329 (1981) (disapproved on other grounds in *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.

5  4th 317, 100 (2000)).

6       45.    Where there is an *absence* of assurances of continued

7  employment, this negates a finding of an implied contract. *See, e.g., Davis v.*

8  *Consol. Freightways*, 29 Cal. App. 4th 354, 368 (1994) (affirming summary

9  judgment where the employer never told plaintiff that he had permanent

10  employment or that it would retain him as long as he was doing a good job);

11  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1389 (1999) (mere

12  general allegations in support of existence of implied contract to terminate for good

13  cause are insufficient to create triable issue); *Alstad v. Office Depot*, 1995 WL

14  84452 at *6 (plaintiff's history of salary increases, promotions, and bonuses did not

15  create "a reasonable expectation that he would not be discharged except for good

16  cause."); *Guz*, 24 Cal. 4th at 341-42 ("an employee's mere passage of time in the

17  employer's service, even where marked with tangible indicia that the employer

18  approves the employee's work, cannot alone form an implied-in-fact contract that

19  the employee is no longer at will.").

20       46.    A claim that merely realleges the alleged breach as a violation of

21  the implied covenant of good faith and fair dealing is superfluous. *Guz v. Bechtel*

22  *Nat'l Inc.*, 24 Cal. 4th 317 (2000).

23      C.    **Plaintiff's First and Second Claims Fail Because He Was**

24          **Employed At-Will.**

25       47.    California Labor Code Section 2922 establishes a presumption

26  that an employment relationship of unspecified duration is "at-will" and may be

27  terminated at any time for any reason by either party. CAL. LAB. CODE § 2922;

28

1   *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 211 (1993), overruled on other

2   grounds, *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1993).

3           48.     If employment is at-will, the employer may also demote at any

4   time for any reason. *Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th at 464-65

5   (1995) (applying the at-will presumption to "lesser quantums of discipline," such as

6   demotion decisions; "There is, of course, a strong common law presumption that an

7   employee may be demoted at-will."), *disapproved on other grounds, Guz*, 24 Cal.

8   4th 317.

9           49.     In at-will employment relationships, the employer's motive for

10   taking disciplinary action is irrelevant, the employer need not treat all employees

11   alike and the employer may act without warning. *Guz*, 24 Cal. 4th at 350, 351 (it is

12   immaterial that the employer acted in "bad faith" or without honest reasons; "[T]he

13   employer may act peremptorily, arbitrarily or inconsistently.")

14           50.     The at-will presumption "may be rebutted only by evidence of

15   an express or implied agreement between the parties that the employment would be

16   terminated only for cause." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App.

17   4th 1359, 1386 (1999); *see also Guz*, 24 Cal. 4th at 337 ("[W]here the undisputed

18   facts negate the existence or the breach of the contract claimed, summary judgment

19   is proper."). *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482

20   (1984) (at-will provision in stock option agreement is binding; "there cannot be a

21   valid express contract and an implied contract, each embracing the same subject,

22   but requiring different results."), *disapproved on other grounds, Foley v. Interactive*

23   *Data Corp.*, 47 Cal. 3d 654 (1988).

24       **D.**    **UPS Had Good Cause To Demote Walters.**

25           51.     In evaluating an employee's claim regarding the reasonableness

26   of an investigation, the proper inquiry for a court is not, "'Did the employee in fact

27   commit the act leading to dismissal?" It is, "Was the factual basis on which the

28   employer concluded a dischargeable act had been committed reached honestly . . .

does not matter; "[I]f the company honestly believed in those reasons, the plaintiff loses even if the reasons are foolish or trivial or baseless.").

54.     The employer need not prove that the alleged misconduct actually occurred, but merely that the employer reasonably believed the alleged misconduct took place. *Cotran*, 17 Cal. 4th at 108 (a reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond).

55.     The analysis required for cases alleging wrongful demotion are the same as the cases involving wrongful termination. *See Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th 454, 467 (1995) (the inquiry into whether good cause exists to support a demotion is virtually identical to the inquiry in the wrongful termination context), disapproved on other grounds, *Guz*, 24 Cal. 4th 317.

**E.**     **Plaintiff's Claims for Wrongful Demotion in Violation of Public Policy and Negligence Fail Because They Are Duplicative of Other Claims.**

56.     As the complaint reveals, these claims are based on the same underlying conduct, and thus fail for the same reasons as stated herein. *See Guz*, 24 Cal. 4th at 352 (duplicative claim added nothing to complaint and was properly dismissed); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (allegations that simply seek the same damages or other relief already claimed in a companion cause of action may be disregarded as superfluous)

**F.**     **Plaintiff's Claim For Negligence Fails Because It Is Preempted By The Workers' Compensation Act.**

57.     Workers' compensation is the exclusive remedy for industrial injuries that arise from employment and do not exceed the normal risks of the employment relationship. CAL. LAB. CODE §§ 3600, 3602; *Charles J. Vacanti,*

1  *M.D., Inc., v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 810-15 (2001); *Livitsanos v.*

2  *Superior Court*, 2 Cal. 4th 744, 752-53 (1992).

3         58.    Courts repeatedly have held that negligence claims are

4  preempted by California's Workers' Compensation Act's exclusivity provisions

5  and should be dismissed with prejudice. *See Bragg v. E. Bay Reg'l Park Dist.*,

6  2003 U.S. Dist. LEXIS 23423, 20-21 (N.C. Cal. Dec. 19, 2003) (granting summary

7  judgment on plaintiff's negligence claim; "Where the misconduct attributed to the

8  employer is actions that are a normal part of the employment relationship, such as

9  demotions . . . criticism of work practices . . . an employee suffering emotional

10  distress may not avoid the exclusive remedy provisions of the Labor Code by

11  characterizing the employer's actions as unfair or outrageous or as harassment.")

12  (citing *Vuillemainroy v. American Rock & Asphalt, Inc.*, 70 Cal. App. 4th 1280,

13  1282, (1999) and *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160

14  (1987)).

15    **G.    Walters Is Not Entitled To Punitive Damages.**

16         59.    In order to sustain a claim for punitive damages against a

17  corporation, California Civil Code section 3294 requires "clear and convincing

18  evidence" of oppression, fraud or malice "on the part of an officer, director, or

19  management agent." CAL. CIV. CODE § 3294(a)(b).

20         60.    In analyzing the issue of how to define "managing agent" for

21  purposes of determining corporate liability for punitive damages under Section

22  3294(b), the California Supreme Court, in *White v. Ultramar, Inc.*, 21 Cal. 4th 563,

23  566-567 (1999) held that the term "include[s] only those corporate employees who

24  exercise substantial independent authority and judgment in their corporate

25  decisionmaking so that their decisions ultimately determine corporate policy."

26         61.    "'[C]orporate policy' is the general principles which guide a

27  corporation, or rules intended to be followed consistently over time in corporate

28  operations. A 'managing agent' is one with substantial authority over decisions

---

CASE NO. EDCV 10-00556 VAP (PJWX)                    -11-

1    that set these general principles and rules." *Cruz v. Homebase*, 83 Cal. App. 4th

2    160, 167-68 (2000).

3           62.    Whether someone is a "managing agent" does not depend on

4    title or position in a corporate hierarchy, nor is it conferred on every individual who

5    supervises others or has the authority to evaluate their performance and discharge

6    them. *See Gelfo v. Lockheed Martin Corp*, 140 Cal. App. 4th 34, 63 (2006) (vice

7    president title alone insufficient). The burden is on the party seeking punitive

8    damages to make this showing. *Ultramar*, 21 Cal. 4th at 577 ("[T]o demonstrate

9    that an employee is a true managing agent under section 3294, subdivision (b), a

10   plaintiff seeking punitive damages would have to show that the employee exercised

11   substantial discretionary authority over significant aspects of a corporation's

12   business.") (emphasis added).

13          63.    Something about the personnel decisions at issue must suggest

14   fraud, malice or oppression. "[W]rongful termination, without more, will not

15   sustain a finding of malice or oppression." *Scott v. Phoenix Schs., Inc.*, 175 Cal.

16   App. 4th 702, 717 (2009).

17

18

19

20

21

22

23

24

25

26

27

28

64.   Any findings of fact deemed to be a conclusion of law is hereby held to be a conclusion of law.

65.   Judgment shall be entered in UPS's favor consistent herewith.

IT IS SO ORDERED.

DATED: January 13 2011                    _Virginia A Phillips_
                                                   The Honorable Virginia A. Phillips
                                                   United States District Judge

Respectfully Submitted:

Date: November 29, 2010

PAUL, HASTINGS, JANOFSKY & WALKER LLP
GEORGE W. ABELE
HOLLY R. LAKE
RYAN J. CRAIN


By:___/s/ - Holly R. Lake_____
                    HOLLY R. LAKE

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.